# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

---

| | |
|---|---|
| **In Re** | |
| BRET H. DOVER and<br>PATRICIA F. DOVER, | **Bankruptcy Case<br>No. 05-43302-JDP** |
| **Debtors.** | |

---

| | |
|---|---|
| R. SAM HOPKINS, TRUSTEE, | |
| **Plaintiff,** | |
| vs. | Adv. Proceeding No. 07-8098 |
| EMILY ZAHM a.k.a. EMILY<br>DOVER, and AUBRI DOVER, | |
| **Defendants.** | |

---

### MEMORANDUM OF DECISION

---

**Appearances:**

Monte Gray, SERVICE, SPINNER & GRAY, Pocatello, Idaho, Attorney for Plaintiff.

Craig R. Jorgensen, Pocatello, Idaho, Attorney for Defendant.

MEMORANDUM OF DECISION - 1

*Introduction*

Chapter 7 trustee R. Sam Hopkins ("Plaintiff") commenced this adversary proceeding against Defendants Emily Zahm a.k.a. Emily Dover, and Aubri Dover, on October 12, 2007.  Adv. Docket No. 1.[1]  Defendants failed to answer the Complaint or to otherwise respond.  Accordingly, upon Plaintiff's request, on February 25, 2008 a default judgment was entered against Emily Zahm for $13,045, and against Aubri Dover for $250.  Adv. Docket No. 15.

On June 26, 2008, attorney Craig R. Jorgensen ("Counsel")[2] filed a Motion to Set Aside Default Judgment and a supporting affidavit.  Adv. Docket Nos. 17, 18.  Plaintiff objected to the motion.  Adv. Docket No. 20.  The Court conducted a hearing on the motion on August 4, 2008, and thereafter took the issues under advisement.  This Memorandum

---

[1] The adversary proceeding docket is referred to as "Adv. Docket," while the docket in the underlying bankruptcy case, *In re Dover*, 05-43302-JDP, is referred to as "BK Docket."

[2] Although he did not file the petition for them, as discussed below, Counsel later advised and represented Debtors Bret and Patricia Dover in connection with certain aspects of their bankruptcy case.

MEMORANDUM OF DECISION - 2

constitutes the Court's findings of fact and conclusions of law, and resolves the issues raised by the motion. Fed. R. Bankr. P. 7052; 9014.[3]

## *Procedural History*

Plaintiff's Complaint against Defendants alleged that on October 14, 2005, the date Debtors Bret and Patricia Dover filed their chapter 7 petition, a vehicle was titled in the records of the State of Idaho in the name of Bret Dover "or" Defendant Emily Dover, a.k.a. Emily Zahm. Adv. Docket No. 1 at ¶ 6. Plaintiff alleged that the title to this vehicle was later transferred by Mr. Dover into Emily Zahm's name only on July 7, 2007. *Id.* at ¶¶ 8-9.

The Complaint further alleged that, in June 2005, three motorcycles were transferred by Debtors Bret and Patricia Dover to Emily Zahm, and that no value was given to them in consideration for the transfers. *Id.* at ¶ 11. On approximately July 9, 2007, the Complaint alleged that Emily Zahm transferred one of the motorcycles to Defendant Aubri Dover, a

---

[3] All section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1330, and rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001– 9036, as they existed prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 108-9, 119 Stat. 23 (Apr. 20, 2005).

MEMORANDUM OF DECISION - 3

member of the Debtors' family.  *Id*. at 13.

Plaintiff contended that the transfers of the vehicle and motorcycle to Defendants were avoidable as either unauthorized post-petition transfers under § 549, fraudulent conveyances under § 548, or preferences under § 547.  *Id*. at ¶¶ 18-19; 21-25; ¶ 31.  The Complaint sought a judgment against Defendants avoiding the respective transfers, and a money judgment for the value of the various vehicles, plus fees and costs.  Adv. Docket No. 1, at 6-7.

A summons was issued by the Clerk on October 12, 2007; it was served on both Defendants by Plaintiff via certified mail on October 15, 2007.  Adv. Docket Nos. 3, 4.  The summons notified Defendants that they must answer or respond to the Complaint within thirty days or risk entry of a judgment by default against them.  Adv. Docket No. 3.  Defendants failed to respond to the Complaint in any fashion.

On January 4, 2008, Plaintiff filed an Application for Clerk's Default, a Motion for Default Judgment, a supporting affidavit, and a Notice of Intent to Take Default and Notice of Hearing concerning these motions.

MEMORANDUM OF DECISION - 4

Adv. Docket Nos. 6 - 9.  While Plaintiff did not send copies of these pleadings to Defendants, he did mail a copy of the Notice to Counsel.  Adv. Docket No. 7 at 2.  On January 16, 2008, the date of the default hearing, Plaintiff's attorney called Counsel's office to remind him about the hearing.  Counsel was out of the office so Plaintiff's attorney spoke with a member of his staff.  Aff. of Monte Gray at ¶ 7.  Counsel did not appear at the hearing.

At the hearing, the Court requested an affidavit from Plaintiff concerning the current market value of the transferred vehicle and the motorcycles, and deemed the motions under advisement.  On February 21, 2008, Plaintiff filed a Memorandum in Support of Motion for Default Judgment and a supporting affidavit, Adv. Docket No. 13-14.  On February 25, 2008, the Court entered a default judgment against Emily Zahm in the amount of $13,045, which included the value of the vehicle and motorcycles, plus the $250 filing fee.  Adv. Docket No. 15.  Judgment was also entered against Aubri Dover in the amount of $250 for the filing fee, for which she was jointly and severally liable with Emily Zahm.  *Id.*

MEMORANDUM OF DECISION - 5

On June 26, 2008, Counsel filed the Motion to Set Aside Default Judgment.  Adv. Docket No. 17.

*Analysis and Disposition*

A.

Federal Rule of Civil Procedure 60(b) ("Civil Rule 60(b)") allows a court to grant relief from a final judgment or order for a variety of reasons.[4]  While they do not refer to this Rule in their pleadings, Defendants argue that the default judgment should be set aside "upon the grounds of excusable neglect", Adv. Docket No. 17 at 2, and therefore presumably rely upon Civil Rule 60(b)(1), providing that the Court may grant relief from a final judgment or order for "mistake, inadvertence, surprise, or excusable neglect. . . ."

Under Civil Rule 60(b), Defendants bear the burden of proving justification for the relief they seek.  *In re Shingleton*, 07.4 I.B.C.R. 73, 73 (Bankr. D. Idaho 2007) (citing *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988)).  Whether relief should be granted under any of the provisions

---

[4] Civil Rule 60(b) is made applicable in bankruptcy cases by Rule 9024.

MEMORANDUM OF DECISION - 6

of Civil Rule 60(b) is addressed to the sound discretion of the Court. *In re Kirkendall*, 00.3 I.B.C.R. 125, 125 (Bankr. D. Idaho 2000) (citing *Zimmerman v. First Fidelity Bank (In re Silva)*, 97.4 I.B.C.R. 118, 119 *(*Bankr. D. Idaho 1997) *aff'd*, 85 F.3d 992 (9th Cir. 1999)). In assessing Defendants' motion, the Court is guided by several policy considerations:

> First, since [Civil] Rule 60(b) is remedial in nature, it must be liberally applied. *Gregorian v. Izvestia*, 871 F.2d 1515, 1523 (9th Cir. 1989). Second, default judgments are generally disfavored, and "'whenever it is reasonably possible, cases should be decided upon their merits.'" *Id*. (quoting *Pena v. Seguros La Comercial, S.A.,* 770 F.2d 811, 814 (9th Cir. 1985)). Third, where a defendant seeks timely relief from the judgment and has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the judgment. *Id*.

*Hammer v. Drago (In re Hammer)*, 940 F.2d 524, 525 (9th Cir. 1991).

"When a default judgment is challenged on grounds of excusable neglect, three factors inform the [bankruptcy] court's exercise of discretion: (1) 'whether the defendant's culpable conduct led to the default'; (2) 'whether the defendant has a meritorious defense'; and (3) 'whether

MEMORANDUM OF DECISION - 7

reopening the default judgment would prejudice the plaintiff.'" *Employee Painters' Trust v. Ethan Enters, Inc.*, 480 F.3d 993, 1000 (9th Cir. 2007) (quoting *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001)). This tripartite test is disjunctive. *Hammer*, 940 F.2d at 526; *Cassidy*, 856 F.2d at 1415. "Hence, a finding that the plaintiff will be prejudiced, *or* that the defendant lacks a meritorious defense, *or* that the defendant's own culpable conduct prompted the default is sufficient to justify the district court's refusal to vacate a default judgment." *Cassidy*, 856 F.2d at 1415 (quoting *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987)) (emphasis in *Cassidy*).

### B.

"A party's conduct is culpable if he has received actual or *constructive* notice of the filing of the action and failed to answer the complaint." *Hammer*, 940 F.2d at 526 (additional citations omitted). Here, it is undisputed that Defendants and Counsel were aware of the commencement of the adversary proceeding. *See* Adv. Docket No. 21, Exs. A and B. Not only did Defendants receive copies of the summons and

MEMORANDUM OF DECISION - 8

Complaint by certified mail, but the record includes correspondence from Counsel to Plaintiff's attorney concerning this adversary proceeding advising that "I am in receipt of the Summons and Complaint in this matter. I am determining whether I have a conflict of interest and can represent the Defendants." Adv. Docket No. 21, Ex. B. The date of this letter is October 22, 2007, more than two months prior to the time Plaintiff sought default judgments. In other words, Defendants and Counsel knew of the pending adversary proceeding, but failed to respond to the action to prevent entry of a default judgment against Defendants.[5]

The vehicle and motorcycles at issue in the adversary proceeding had been the subject of a prior motion for turnover filed by Plaintiff in the underlying bankruptcy case. BK Docket No. 43. Correspondence occurred between Counsel and Plaintiff's attorney both prior to and following the filing of the motion for turnover. *See* Adv. Docket No. 18, Ex. A. In addition, Defendants, acting through Counsel, filed a formal response to

---

[5] It appears that Jorgensen has concluded he has no conflict in this case, as he is still representing Defendants at the present time.

MEMORANDUM OF DECISION - 9

the turnover motion. BK Docket No. 44. Presumably believing an adversary proceeding was required, Plaintiff withdrew the turnover motion. BK Docket Nos. 49. Based upon these events, Counsel could perhaps have believed that the issues surrounding the motorcycles and vehicle had been resolved. However, any reasonable basis disappeared when Plaintiff thereafter sued the Defendants.[6]

Despite Plaintiff's attorney's certificate of service to the contrary, Counsel insists he did not receive the Notice of Intent to Take Default and Notice of Hearing. Adv. Docket No. 18, pg. 2. Counsel does not dispute that his office staff received a call from Plaintiff's attorney on the morning of the default hearing to remind Counsel about the hearing. While Counsel was out of the office that day, there is nothing in the record to show that he took any action regarding the default motion upon his return. Moreover, Counsel does not deny that on March 18, 2008, the

---

[6] Counsel states in his affidavit that after the adversary proceeding had been filed, "[f]urther discussions between Trustee, attorneys and myself occurred. I thought that the matter had been fully and completely resolved. Very little activity was taken to move the case along." Adv. Docket No. 18, pg. 2.

MEMORANDUM OF DECISION - 10

Clerk sent Counsel electronic notice that the default judgment against Defendants had been entered.

Thereafter, Defendants were notified by the Bannock County Clerk that Plaintiff's default judgment had been filed for enforcement as a foreign judgment. Adv. Docket No. 21, Ex. F. In spite of having this information, it was not until Plaintiff's recorded judgment obstructed a real property sale that Defendants asked for relief from that judgment.

In summary, it seems Counsel and Defendants were content to exchange correspondence with Plaintiff's attorney, rather than formally contest the transfer avoidance litigation. Under the circumstances, the Court finds that this conduct was culpable.

### C.

A party seeking relief must show the existence of a meritorious defense "as a prerequisite to vacating an entry of default." *Employee Painters' Trust*, 480 F.3d at 1000 (quoting *Haw. Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986)). To make this showing, Defendants attach their proposed Answer to Complaint to Counsel 's Affidavit. Adv.

MEMORANDUM OF DECISION - 11

Docket No. 18, Ex. F.  In addition to admitting and denying the specific allegations of the Complaint, the Answer sets forth three so-called affirmative defenses, none of which the Court would consider to present a potential meritorious defense to Plaintiff's claims.

The First Affirmative Defense states, in its entirety, "That the [vehicle] was in all respects legally the property of Defendant Emily Zahm and any title reflecting ownership in Bret Dover was for convenience sake and not of legal consequence."  *Id*.  Apparently, Defendants contend that Defendant Emily Zahm became the owner of the vehicle before Debtors filed for bankruptcy, and therefore, no avoidable transfer occurred.

This allegation ignores applicable statutory and case law.  Property interests in bankruptcy cases are defined by state law.  *Butner v. United States*, 440 U.S. 48, 55 (1979).  In particular, this Court has held that "Idaho's motor vehicle titling law 'expresses a legislative policy that a motor vehicle may be owned by only one person at any one time – the party whose name appears on the official certificate issued by the State.'" *In re Mason*, 06.2 I.B.C.R. at 19 (quoting *Hopkins v. Shradley (In re Shradley)*,

MEMORANDUM OF DECISION - 12

03.1 I.B.C.R. 7, 8 (Bankr. D. Idaho 2003)).  In *Shradley*, the Court explained that "[h]istorically, Idaho courts have strictly interpreted [Idaho Code § 49-503] to promote the underlying policy of the statute that vehicle ownership be determined exclusively by reference to the name on the title certificate."  03.1 I.B.C.R. at 9.  Indeed, Idaho Code § 49-503 provides, in pertinent part, "no person acquiring a vehicle from the owner . . . shall acquire any right, title, claim or interest in or to the vehicle until he has issued to him a certificate of title to that vehicle . . . ."  Thus, ownership of an Idaho vehicle has long been determined solely by reference to the name (or in this case, names) appearing in the records of the State on a motor vehicle's certificate of title.  *Hopkins v. Brasseaux (In re Saunders)*, 08.1 I.B.C.R. 16 (Bankr D. Idaho 2008) (*see also In re Woods*, 08.2 I.B.C.R. 61, 62 (Bankr. D. Idaho 2008);[7] *In re Friel*, 90 I.B.C.R. 212, 214 (Bankr. D. Idaho 1990).

Simply put, the statutes and case law dictate that the owner of a

---

[7] The *Brasseaux* decision is particularly instructive here.  An elderly parent purchased a vehicle and when titling it, included her daughter's name on the title so that if the parent died, her daughter would be able to avoid probate.  The daughter was unaware that her name was on the title.  When the daughter filed for bankruptcy, the Court concluded that her name on the title established the daughter's ownership interest in the vehicle, and the trustee's right to recover it.

MEMORANDUM OF DECISION - 13

motor vehicle is the party listed on the title certificate.  In light of this, Defendants' "First Affirmative Defense" lacks merit, as it is undisputed that Debtor Bret Dover was listed as the owner on the vehicle's certificate of title on the day the bankruptcy petition was filed.[8]

The other affirmative defenses also amount to mere denials of Plaintiff's claims.  The Second Affirmative Defense alleges that "the post petition transfer of, if any, of [sic] the 1999 Volkswagen Beetle and other vehicles were not violative of 11 U.S.C. § 548, 549 and 550(a)."  The Third Affirmative Defense is equally nondescript and states that "the transfers alleged by the Plaintiff are not violative of 11 U.S.C. § 547 nor of any other provision of the Bankruptcy Code."  Adv. Docket No. 18, Ex. F.  These allegations, as vague and general as they are, do not articulate any defense to Plaintiff's claims sufficient to justify relief from the judgment.

---

[8] At hearing, Counsel essentially conceded that Defendants have no defense to Plaintiff's claim to the vehicle. Instead, if the default judgment is set aside, Defendants wish to contest the valuation of the property, and thereby, the amount of the money judgment.  However, the Court required Plaintiff to prove the valuation prior to the entry of the default judgment, which Plaintiff did be competent evidence.  Adv. Docket Nos. 13, 14.  In response, Defendants offer no evidence whatsoever to dispute Plaintiff's valuation.  Thus, there is no reason to disturb the judgment.

MEMORANDUM OF DECISION - 14

Defendants have not shown they have a meritorious defense to the allegations in Plaintiff's Complaint should the default judgments be set aside.

### D.

While perhaps not in substantial respect, Plaintiff will be prejudiced if the judgment against Defendants is set aside. Plaintiff has incurred legal costs in obtaining the default judgment and in attempting to enforce it under state law. Adv. Docket No. 21, ¶¶ 10-12. While Plaintiff's expenses in reliance upon Defendants' failure to defend are probably not a large amount, Defendants have not offered to compensate Plaintiff for these costs.

### *Conclusion*

The Court disdains default judgments. Even so, in the exercise of its discretion, the Court concludes that Defendants have not shown that cause exists to justify relief from the default judgment in this action. Defendants' culpable conduct led to the entry of the default judgments, it appears unlikely that Defendants have any defense to Plaintiff's claims, and

MEMORANDUM OF DECISION - 15

Plaintiff would experience some prejudice if the judgment was set aside.

Defendants' motion will be denied. A separate order will be entered.

Dated: September 8, 2008

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge